By the Court. Hoffman, J.
The chief difficulty of the court has arisen from the state of the record.
The action is brought upon a policy of insurance on a vessel, claiming to recover for a technical total loss. The value of the ship in the policy was $16,000.
The Judge, at the trial, was requested by the plaintiff to charge certain propositions, which he declined in the form presented. The Judge embodied his actual charge in nine propositions. Each party took exceptions. He also requested the jury to answer, in writing, three particular questions, which they did; and they found a general verdict for the plaintiff.
All the requests—all the propositions in the charge of the Judge, except the ninth, and all the exceptions bear upon the question of a total loss. And if there had been no special finding sought from the jury, and assuming that the law of the Judge was right throughout, the general verdict would have entitled the plaintiff to judgment for a total loss.
Again, but for the ninth proposition before noticed, we should have been compelled to compare the general verdict with the special finding; and the Code (section 262) provides that where a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.
If, then, the general verdict alone would have warranted judgment for a total loss, and the special finding would not, the plaintiff could not recover for such loss. Still it might have been the duty of the court to reconcile the two if possible; and if the testimony disclosed facts which would reconcile them, but which were not involved in the verdict, a new trial might have been had to establish them.
But the ninth proposition in the charge of the Judge, before alluded to, supersedes all these considerations.
In that proposition the jury were told, that if the plaintiff was-not entitled to recover for a total loss, he would still be entitled to an average loss, including a general average, which could be adjusted under the direction of the court. The Judge then sub *287 mitted the whole case to them, requesting them to find the particular facts.
The jury were then instructed that they must necessarily find for the plaintiff, as upon either theory as to the nature of the loss, he must recover; and the plaintiffs contend, and the defendants admit, this to have been the case. The general verdict then determines nothing, and imports nothing, upon those propositions which would involve the question, whether the loss would be a total or a partial one ? It is nakedly, that the plaintiff is entitled to recover; a total loss, if something besides the verdict gives it to him, a partial loss otherwise.
And thus the case depends upon the answers to the special questions; in truth, upon that to the third question.
In reply to such third question, the jury have said, that the whole cost of full repairs at San Francisco would have been $12,000. Deducting one-third," new for old, we have then $8,000, which will not make up a total loss. The rule is not to be questioned, that there must be an excess of a moiety. The value in the policy was $16,000. Then the counsel for the plaintiff presents this proposition, to establish a total loss. Surveyor’s fees were paid, amounting to $144; and this is proven in the case. Now, either the jury have included such fees in the estimate of $12,000 as necessary and sufficient to make complete repairs, or they have not. Surveyor’s fees are to go into the estimate, but not to be subject to the abatement of one-third. Hence, if included by the jury, the deduction should not be made, and then the cost will be $8048 after the deduction. If not included, then the fees $144 are to be added to $8000..
We need not notice the point, that we are thus compelled to find as a fact, that the surveyor’s fees were paid; and that the Court of Appeals forbids us, at General Term, to deduce facts from evidence, and give judgment upon them. There is an answer more decisive.
We consider it settled, that in making an estimate of the extent of the injury which warrants an abandonment, surveyor’s fees are not to be included.
In deciding what may be taken into the account, in estimating a constructive total loss, the Supreme Court of Massachusetts has settled a principle which will exclude such fees entirely. In Hall *288 v. The Ocean Insurance Co., (21 Pick., 472,) which was an action to recover for a total loss, the Judge at the trial laid down the rule, that the expenses incurred for the purpose of ascertaining the extent of the loss, should not be comprised in the charges which were to determine whether the losses amounted to fifty per cent, of the value. In this the court fully sustained him.
The court also declared the rule, that the items which should properly be carried to the account of general average, should not be included.
“ The court are of opinion that the particular average loss is to be made up in the usual manner, deducting one-third new for old, independently of the general average, and of the expenses of ascertaining and proving the loss, and if, upon such a calculation, the sum exceeds one-half of the amount insured, then, and not otherwise, the insured has a right to abandon for a total loss.”
In Orrock v. The Commonwealth Insurance Company, the Supreme Court sustained the ruling of the Judge, that in making up fifty per cent., which authorizes an abandonment, the vessel’s proportion of items of general average should not be included. The evidence of Mr. Tyler in this case showed the custom of Boston. The expense of a survey while the cargo was on board, would be charged as general average, and the expense of a second survey of the vessel, after the cargo was out, would be partial loss; that the cost of the carpenter’s work and labor, and the expenses necessary in order to make surveys, would follow the surveys respectively, and be general average or partial loss, as the principal to which they were incident was the one or the other.
The adjustment of Mr. Phillips, the eminent writer on Insurance, in Potter v. The Ocean Insurance Company, (3 Sumner, 27,) was upon a similar principle. He had charged one-half of surveyor’s fees to general average, and one-half to particular average against the ship. He then deducted one-third from these sums. Justice Story held, that the deduction ought not to be made from such items.
By the 369th article of the Code of Commerce of France, an abandonment may be made when the loss or average is not less than three-quarters of the value of the property insured, The writers distinguish between losses real and legal. The case of a capture is of the last character; that of destruction to the amount *289 of three-quarters, of the former. The latter is the presumption of an entire loss. (Boulay-Paty, vol. 4, 222.)
In making the estimate of damage to such an amount, nothing is to be considered but what has fallen corporally, and by the peril of the sea, upon the thing insured. No expenses which the assured is obliged to make, and which, indeed, increase the price of the goods to him, are considered. (Boulay-Paty, 4, p. 251.)
The rule as to a vessel is, to take her value as stated in the policy and her market value at the place of the accident, and ascertain whether the latter is one-fourth of the former. The comparison is not with the amount judged necessary to repair her. (Boulay-Paty, 4, p. 251.)
It is not eligible and just, that when a partial loss to a vessel alone, or a loss to which she as well as cargo and freight are to contribute, is adjusted, surveyors’ fees should be charged to underwriters. They have resulted from the peril and the damage. The case is different when the question to be solved is, what would it cost to replace the vessel in the same situation she was before the injury, deducting as usual ? The result of that inquiry is the test amount, without the expenses of ascertaining it. The moiety rule is itself an arbitrary one, and not a favorite of the-law. The admission of items to make up the sum should be rigidly limited to what the rule exacts.
Although the damage to the vessel at the Columbia River may have formed a ground of general average, yet it was included in the estimate at San Francisco. That was the aggregate of injury sustained by her as she then existed. The mere fact of a previous damage constituting a claim for general average, could not add to an estimate which was to include the total injury.
The liability of the ship to contribute any thing in general average to the owners of the lumber sacrificed in the river, could not upon any principle be added.
The result is, that there was not a total loss. The finding is conclusive.
It has been intimated that neither party desires a new trial, being content to take the decision of the court upon the question as to a total or partial loss, upon the record as it'stands. If so, we need not enter upon the consideration of many important questions upon the ruling of the Judge, the exceptions, or the *290 grave objections to the finding upon the evidence, supposing the record enables us to examine them. Unless, therefore, we have misunderstood the counsel, the judgment will be for a partial loss. The counsel, it is supposed, would agree upon the principles of adjusting this. If not, they can be settled by one of the Justices before whom the appeal has been heard.*
Upon the freight policy, the following was the judgment of the court.
By the Court. Hoffman J.
is a case submitted up.on points, and it is admitted that the case made in the cause of Fiedler against the same defendants, in the action upon the policy on the vessel, with all the answers of the jury, shall be treated as found in this case; the amount of the verdict being, however, $3000, subject to adjustment.
The action is upon a freight policy on the barque Helen M. Fiedler, for $2Q00. The claim is for $2000. The claim is for a total loss.
The vessel proceeded from San Francisco to the Columbia River, and there took in a cargo of lumber. She met with various accidents and perils on her return, and at the mouth of the river she was driven ashore, and portions of the lumber were placed alongside in rafts, and some quantity swept away by the current and drift wood. The quantity or value is not stated.
The vessel carried the great bulk of her lumber to San Francisco, and delivered it there to order, or into the hands of the consignees or owners. These were the Messrs. Ward and Company, who were also the agents of the owners of the vessel, Burgoyne and Company, Russel the mate, and the master. Burgoyne and Company, paid their share of the price of the lumber, and the vessel was consigned to Ward & Co. After that, the proceedings and survey, and sale of the ship took place, and' the vessel was abandoned to the insurers as for a constructive total loss, as stated in the other cause.
*291 We understand that counsel agree to our finding these undisputed facts from the testimony in the case, and these are all that are material to determine the claim for a total loss of the freight.
There is no ground for the claim of the plaintiff upon an actual total loss of freight from the failure of the vessel to earn it through any of the perils insured against. It is not placed upon this basis.
It may appear somewhat singular, that the claim should be asserted at all, when the cargo, (what was actually lost in the river being wholly undetermined,)was carried to the port of destination, was actually delivered, and the freight was received, or was legally payable, and when the agents of the owners of the vessel received, or were entitled to demand it.
The reasoning to sustain the claim we understand to be this—
The abandonment to the underwriters on the vessel, being for a total loss, and retrospective, carried a title to the ship as she was at Columbia River. The freight collected at San Francisco, passed to the underwriters of the ship, and when collected by Ward & Co., belonged to such underwriters. Such freight was, therefore, lost to the plaintiffs by the perils of the sea, as much as if the ship had foundered at the Columbia River.
It might be sufficient to say, that in this case, in the action against the underwriters on the ship, we have decided that there. was not a constructive total loss.
But let it be assumed, in the present case, that there was such a loss of the vessel, we apprehend that the plaintiff must still fail in his demand.
The important case of The Scottish Marine Ins. Co. v. Turner, (20 L. & Eq. 24,) in the House of Lords, and cases cited, are the only authorities necessary to be referred to. That ease embraces the whole of the law which is applicable in the present instance. A ship was insured for £7500, by the appellants for £1500, and by the Greenock Insurance Co. for the balance. The present appellants were insurers on the freight for £1500.
The ship was much damaged in the early part of the voyage,. by coming in contact with an iceberg, but reached her port of discharge, where she met with much further damage. After this, the owners abandoned her for a total loss, and in an action, it was established that she was properly abandoned. The cargo had, 'however, been delivered, and the freight earned and paid by the *292 consignees to the owners. It was decided, (in a previous action,) that the freight belonged to the insurers of the ship, the owners having accounted to such insurers, the abandonees, for the freight, brought the present action on the freight-policy of the defendants below. All the. Judges in the Scottish Courts, except Lord Moncrief, sustained the claim. The case went to the House of Lords on appeal.
The decision was there reversed.
The Judges in the House of Lords take this distinction :—If the abandonment of the ship is made during the voyage, and before the freight is earned by delivery of the cargo, the áction mpy be sustained; but it cannot be when there is no abandonment until the ship had arrived in port, and when the owners were in a condition to insist on the payment of freight, and the freight had been paid to them. They adopt the language of Baron Alderson, that “ there is no instance to be found in which an action for a total loss of freight has been held to be maintainable where the freight has been actually earned.”
Lord Truro, after stating, that, “ in his opinion, the decision that there had been a total loss of the ship was in advance of previous decisions,”, stated the import of the contract of insurers on freight. .“The underwriters on freight” he says “bind themselves to indemnify the assured against any loss of freight occasioned by the ship being prevented performing the voyage insured by any of the perils mentioned in the policy, and thereby the freight insured being earned. They do not engage that the assured should be able to procure a loading, or that they should be entitled to retain the freight, as between themselves and any other persons, after it shall have been earned.
“The expression, ‘the loss of freight,’ has two meanings; freight may.be lost in the sense, that by reason of the perils insured against, the ship has been prevented earning freight; or ‘ loss of freight,’ may be used in the sense that it may be lost to the .owners after it has been earned, by some circumstances unconnected with the contract between the underwriters on the freight and the assured.
“ For a loss of freight, in the first sense, the underwriters on the freight are liable; but for any loss of freight incurred by the owners after it has been earned, I conceive the underwriters are *293 not liable. I can extract no obligation whatever from the policy which should subject them to such a loss.
“ The underwriters on the freight have engaged that the ship should not be prevented, by the perils of the sea, from enabling the owners to earn freight; nor was she so prevented, for, in spite of those perils, she arrived in port, and the owners obtained payment of the freight. The right of the underwriters to claim payment of that freight from the owners, arose, not from the perils of the sea, but from the election made by the owners, after the freight had been earned and paid, to treat the ship as wholly lost on or before the 11th of August, before she got into dock.”
The case in which it was decided that the freight was to be paid to the insurers, was Stewart v. The Greenock Marine Insurance Co. (2 House of Lords, and Cases, 159). The facts of the present case are nearly identical with that of The Scottish Company v. Turner. This vessel, indeed, met all the disaster and injury at the Columbia River; the vessel in that case met some in the Gulf of St. Lawrence, and more in harbor, but before getting moored. This difference is immaterial. In each case the lumber was delivered, and the freight earned. In each case the freight went into the hands of the ship-owners, or their agents. In each case the abandonment was subsequently made, after the freight had been earned, and was paid or payable. In the Scotch case, the underwriters on freight were among the underwriters on the ship. Here, as far as the case shows, these defendants were the only underwriters on ship and freight.
We find, again, that before the insured brought their action they were obliged to account to the insurers of the vessel for the freight. The Judges, in the court below, relied much upon this, holding that the owners of the vessel never received the freight above for their own use, but for the underwriters.
This argument was answered by Lord Truro: “In this case, at the time the owners received the freight, they so received it on their own account, for their own benefit, and, as the facts then stood, were entitled to retain it against all the world. The contract between the owners and the underwriters on the freight had been entirely performed, and the relation between them determined, and the assured were entitled, then, not only to retain the freight but to recover comnensation for any damage to the ship. *294 But they preferred to claim a total loss and abandon the ship. By virtue of that election, the freight, received for their own benefit, became an item of account between them and the underwriters on the ship.”
We may also observe, that the rights of the parties under "these separate policies ought to be. determined upon the same principles as if they were made by different assurers.
Tn our judgment the claim for a total loss is untenable
The parties, it is stated, are prepared to admit, among themselves, any claim for a partial loss on the lumber swept away in the Columbia River,

 Since this opinion was prepared and the judgment delivered, I have met with the case of Greely v. The Fremont Ins. Co. (9 Cushing Rep., 415). It was there expressly held that general average losses are not to be added to the cost of repairs in order to determine the question of an excess of half the value upon a constructive total loss.